KRAUS, Appellant, v. WISCONSIN LIFE INSURANCE COMPANY, Respondent.

*April 28—June 1, 1965.*

612

For the appellant there were briefs by *Beaudry & Kershek* and *Eugene A. Kershek* and *Richard D. Kaestner,* all of Milwaukee, and oral argument by *Mr. Eugene A. Kershek* and *Mr. Kaestner.*

For the respondent there was a brief by *Petersen, Sutherland, Axley & Brynelson,* and oral argument by *James C. Herrick,* all of Madison.

FAIRCHILD, J. The grace period for payment of the September 14th premium ran out less than three months after the disability of insured began. The company takes the position that the disability rider, by its terms, calls for waiver of premium after total and presumably permanent disability has continued for three months and proofs thereof have been filed with and approved by the company. It contends that because the disability in this case had not continued for three months before expiration of the grace period, the September 14th premium was not waived, and since it had not been paid, the policy was not in force when the insured died. The company relies, as a second line of

defense, on the fact that no notice or proof of disability was ever filed.

The portions of the disability rider material to the question are as follows:

"In the event of the Insured becoming totally and permanently disabled as the result of bodily injury or disease originating after the date upon which these provisions take effect, and having been so disabled for at least three months, the Company hereby agrees, upon receipt and approval, at the Company's Home Office, of due proofs of such facts, to waive the payment of each and every premium of this Policy as it becomes due after date of said approval, subject, however, to the restrictions and provisions herein contained.

"The Insured shall be deemed totally and permanently disabled when he has become totally, continuously and permanently disabled, by bodily injury or disease, so that he is, and presumably will be, for life, unable to perform any work, mental or manual, or to conduct any business for remuneration or profit, except that, independently of all other causes and without prejudice to any other cause, the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, shall be deemed total and permanent disability. Hereafter the words 'disability' and 'disabled' shall be used to mean 'Total and Permanent Disability' or 'Totally and Permanently Disabled,' respectively, as herein defined. Disability which has been continuous for a period of six months immediately preceding receipt of the due proofs aforesaid shall be presumed permanent, but only for the purpose of determining the commencement of liability hereunder.

"The Insured shall give written notice to the Company at its Home Office of his claim that he is disabled and is entitled to disability benefits. Said notice shall be given both during the lifetime and the disability of the Insured and before the expiration of one year after the date when the Insured became disabled. Proof of disability shall be upon forms furnished by the Company. Failure to give notice within said one year shall not invalidate any claim if it shall

be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

"Any premium of the Policy which became due and was paid during the disability and during the period of six months immediately preceding the date of approval of due proofs of disability shall be waived by the Company and the payment refunded to the Insured."

The rider further provides that the company may, after initial approval and waiver of premiums, require proof of continuance of disability from time to time, and that if the insured should recover sufficiently so as no longer to be totally disabled, waiver shall cease as to future premiums.

We conclude that the dominant purpose of the disability rider, reading it as a whole, is to relieve an insured who buys this additional protection from the burden of premiums falling due while he is unable to perform work or conduct business under such circumstances that the condition of inability will presumably continue for the rest of his life.

There are, of course, obvious problems for the insurer in dealing with mental or physical impairment which may be serious but not total, or which may be total but will not in fact remain so until the end of life. The rider clearly contemplates, for example, that total disability may occur, and appear very likely to continue until death, but that there may be, in time, sufficient recovery from it so that disability is no longer total, and in case of such recovery, premiums falling due thereafter are not to be waived.

A number of the provisions of the rider have been inserted to protect the company from fraudulent or ill-founded claims of total and permanent disability, to provide it with a reasonable opportunity to evaluate whether recovery from total disability is likely to occur, and to require in all cases a test period of at least three months to determine whether there is in fact recovery from a condition of total disability. If all such provisions are strictly and literally applied to the

case before us, plaintiff must fail. The real question as to each provision is whether it must be deemed to go to the substance of the risk the company assumed, and applicable to all cases, or whether in a class of situation where it destroys the protection which the rider was intended to provide, it must be held inapplicable.

The following provisions, if strictly and literally applied, would defeat plaintiff's recovery in this case:

(1) The company's obligation to waive premiums depends upon total and permanent (of course "permanent" means only "presumably" permanent) disability having continued for at least three months. In this case three months did not expire between the beginning of disability and the close of the grace period for the first premium which was not paid. Even if the waiver be retroactive, as indicated under (4), below, three months did not elapse from the beginning of the disability to the date of death.

(2) The obligation to waive premiums also depends upon receipt and approval by the company of due proof of disability. In this case no proof was ever tendered, nor was notice of such claim given to the company.

(3) The insured is to give written notice to the company of his claim of disability. The notice is to be given while the insured is alive. In this case no notice of the claim of disability was given by anyone, during the lifetime of the insured or thereafter, and twenty months elapsed after the death before this action was brought.

(4) Once the obligation to waive is established, there is a retroactive waiver of all premiums which become due and were paid within six months immediately preceding the date of approval of due proofs of disability. The September 14th premium was not paid. Twenty-two months elapsed between the due date of the premium and the commencement of this action, and no proofs were tendered nor approved.

In order to grant recovery to this plaintiff, it would be necessary to determine that each of the foregoing requirements was inapplicable, or that compliance was properly excused under the circumstances.

With respect to (1), above, the courts are not in agreement whether, when the insurer is obligated to waive premiums retroactively after disability has existed for a specified period, and when the insured dies after a period of disability of shorter duration, during which there has been failure to pay a premium, such unpaid premium is deemed waived.

"There is a divergence of judicial opinion on the question whether death constitutes a total and permanent disability within the terms of a policy waiving premiums by reason of such disability. In some jurisdictions death is held to be included within the terms, but in other jurisdictions it is held that disability presupposes life and therefore death is not disability within the terms of the policy. In accordance with these divergent viewpoints, where the policy provides for waiver of premiums after continuation of disability for a certain period of time and insured dies from the disability before the expiration of the period, there is authority that the premiums will be deemed waived, even though the policy further requires that proof be made in the lifetime of insured, but there is also authority that insured must live until the end of the period, at least where proof in the lifetime of insured is required by the policy. Where the policy requires proof during the continuance of disability it has been held that proof after the death of insured is not within the terms of the policy." [1]

"A clause in a life policy providing for a waiver of premium in case of disability may require that such disability continue for a period designated in the policy, as a condition precedent to waiver. In such event, both conditions, that of total disability and continuance for the specified period, must be shown. An insurer would not be required to waive premiums falling due during the three months' pe-

[1] 45 C. J. S., Insurance, p. 472, sec. 621 (11).

riod after total disability commenced, where the disability was not in fact permanent and was under the policy not presumed permanent until such three months' period expired. A very few cases, following this logic literally, have held that if the insured dies before the expiration of the test period, a waiver will not result. The great majority of cases have considered that death is as permanent a disability as one can suffer, and that if the disability continued to be total from its inception until death, the fact that the running of the period was so interrupted would not prevent a waiver of premium clause from operating—the presumption of permanency so charted out by the policy yielding to the stark reality of permanency created by death. Continuance over such an arbitrary period is not, therefore, essential in all cases." [2]

Although the courts have usually resolved the question by deciding whether or not death is total and permanent disability, so that the minimum test period does or does not continue to run after death, we would find a different semantic approach more realistic.

Surely one of the principal purposes for the test period is to eliminate claims of disability in all cases where there is in fact a recovery from disability during the test period. In the light of that purpose, it seems to us that it can well be argued that where death occurs before the expiration of the specified minimum period of disability, it is conclusively established that the disability continued to the end of life, and the running of the balance of the test period becomes immaterial.

[2] 15 Appleman, Insurance Law and Practice, p. 103, sec. 8307. And see *Commonwealth Life Ins. Co. v. Francis* (1939), 278 Ky. 343, 128 S. W. (2d) 742; *Kampf v. Franklin Life Ins. Co.* (1960), 33 N. J. 36, 161 Atl. (2d) 717. But see *Himelbloom v. Metropolitan Life Ins. Co.* (1934), 128 Neb. 52, 257 N. W. 525; *Avery v. New York Life Ins. Co.* (5th Cir. 1933), 67 Fed. (2d) 442; *Winkelmann v. Central States Life Ins. Co.* (1936), 231 Mo. App. 501, 101 S. W. (2d) 736; *Hinkley v. Penn Mut. Life Ins. Co.* (D. C. Wash. 1941), 37 Fed. Supp. 1018.

We need not, however, decide the point in this case because of our conclusion that plaintiff is precluded from recovery for other reasons.

The requirement in (3) above is that the insured is to give notice of his claim of disability. Perhaps with the thought that it might be given by someone else, the rider also specifies that the notice shall be given during his lifetime. If it were decided, under (1), that where death occurs less than three months after the beginning of total and permanent disability, there can be retroactive waiver of a premium which fell due during disability, it would necessarily follow that the requirement of (3) that notice be given by the insured and within his lifetime cannot be strictly applied to this type of situation. We conclude, however, that such provision should be relaxed only enough to permit notice by the personal representative of the insured, or by the beneficiary, within a reasonable time.

In *Schlintz v. Equitable Life Assur. Society* [3] this court held, under a disability policy, that mental incapacity could excuse the failure of the insured to give notice on the grounds that insured's incapacity made it impossible for him to give notice, the giving of notice by the insured was not a material part of the consideration to be paid, and the failure would operate as a forfeiture if not excused. The court said, however, at page 268: "Under those circumstances, all the insurer could require was that it be given notice of Crowell's disability by him within a reasonable time after his recovery of sanity, or by his guardian within a reasonable time after the latter's appointment and knowledge of the policy."

The requirement in (2) above is that the obligation to waive premiums depends upon receipt and approval by the company of proof of disability, upon forms furnished by it. The company could not defeat the rights of the insured or

---

[3] (1937), 226 Wis. 255, 276 N. W. 336.

beneficiary by refusing to furnish forms nor by withholding approval of proper proof, but in this case there was no notice of claim of disability nor tender of proof at any time.

The policy before us does not provide for retroactive waiver, upon filing proof, of all premiums which have become due after the commencement of disability, but, under (4), above, retroactive waiver is limited to those premiums which became due and were *paid* within six months immediately preceding the date of approval of due proofs of disability. It is true that the rider contemplates payment and refund of such past premium, whereas in this instance there was no payment, but because of the physical and mental incapacity of the insured, we would consider the difference between refund of a premium already paid and retroactive waiver of an unpaid premium as being a matter which would be excused by impossibility, under the reasoning of the *Schlintz Case* with respect to notice. There is also language in the rider which, although providing that the disability rider shall automatically terminate if any premium be not paid within the month of grace, states that the lapse is without prejudice to claim for disability which commenced prior to such termination. Our problem, however, with (4) is that no proof was ever tendered and far more than six months have elapsed since the premium became due. Thus retroactive waiver, under the terms of the rider, can no longer reach back to that premium in any event.

This is a "hard case" because it appears that the facts of insured's disability were so readily ascertainable that the company cannot have been prejudiced in determining them when it was finally presented with a claim of liability on the policy. The complaint alleges that the automobile accident in a city in another state rendered insured totally unconscious and he remained so until his death. Probably there are

hospital and other records which establish the facts beyond all doubt.

The company, indeed, stipulated to the facts without trial. We cannot, however, construe such stipulation as a waiver of the failure to give notice and present proof, since there was also a stipulation that no notice of disability or proof was given. It was agreed that notice of death was timely received by the company. The record does not show when such notice was given, what it contained nor any circumstances which placed the company in a position where it could be said to have waived notice and proof.[4]

We deem the requirement of notice of claim of disability and proof thereof and the limitation of retroactivity of waiver to six months before the date of proof as matters of substance which the company placed in the contract for its protection, and the fact that it may appear by hindsight that in this case the company was not prejudiced by failure to comply does not justify our holding these requirements insignificant or inapplicable.

Thus the company must prevail, upon the record which is before us.

*By the Court.*—Judgment affirmed.

GORDON, J. (*concurring*). I agree that the judgment should be affirmed. However, I would do so for a reason different from that relied upon in the court's opinion.

The contract requires three months of total disability as a condition for triggering the waiver of premium. This condition was not met, and, as a result, the policy expired for nonpayment of the premium.

---

[4] See *Kampf v. Franklin Life Ins. Co.* (1962), 37 N. J. 593, 182 Atl. (2d) 855, 856, 857.

I think the trial judge was correct when he concluded as follows:

"The contract by its terms is free from ambiguity; by its language the instrument must be understood to mean what it clearly expresses. Therefore the Court believes the benefit of the rider cannot be invoked until the condition precedent has occurred: The insured must become totally and permanently disabled and remain so disabled for at least three months."

Does death during the three months' period satisfy the requirement? Death is simply not the same as disability. Because of the comprehensiveness and finality of death, it may be tempting to regard it as encompassing total disability. Nevertheless, these words have separate meanings which, in my view, do not permit treating death as a form of disability under the insurance policy. The Illinois court phrased the matter in these terms: "Disability presupposes life. Death is the antithesis of life." *Ferguson v. Penn Mut. Life Ins. Co.* (1940), 305 Ill. App. 537, 542, 27 N. E. (2d) 548. See *Hinkley v. Penn Mut. Life Ins. Co.* (D. C. Wash. 1941), 37 Fed. Supp. 1018, 1023.

I am authorized to state that Mr. Chief Justice CURRIE joins in this concurring opinion.